UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NIKKI KELLEY | ) | CASE NO. |
| 2995 Chaucer Drive NE | ) | |
| Canton, OH  44721 | ) | JUDGE |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| vs. | ) | |
| | ) | **(Jury Demand Endorsed Herein)** |
| PUB GROUP 3 MANAGEMENT, LLC | ) | |
| 5260 Dressler Road | ) | |
| Canton, OH  44718 | ) | |
| | ) | |
| *Please serve:* | ) | |
| Chris Maggiore | ) | |
| 4788 Nobles Pond Drive, N.W. | ) | |
| Canton, OH  44718 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CHRIS MAGGIORE | ) | |
| 4788 Nobles Pond Drive, N.W. | ) | |
| Canton, OH  44718 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Nikki Kelley, by and through counsel, for her Complaint against Defendants, Pub Group 3 Management, LLC (Pub Group Management), and Chris Maggorie ("Maggorie"), states and alleges the following:

**NATURE OF ACTION**

1. This action arises under the Family Medical Leave Act as amended ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Ohio Civil Rights Act as amended, Ohio R.C. § 4112.01, *et seq.*

## PARTIES

2. Plaintiff, a 56-year-old female resident of Stark County, Ohio, was employed by Defendants and/or their predecessors from 1992 to February 22, 2018.

3. Pub Group Management, a limited liability company located in Stark County, Ohio, conducts all or a substantial part of its business activities in Ohio.

4. Pub Group Management, is and was, at all times relevant hereto, part of a family of entities consisting of Pub Group Management, Dressler Pub Group, Inc., Fulton Pub Group, Inc., and 619 Pub Group, Inc. (collectively referred to as "Pub Group entities" or "Pub Group").

5. All of the Pub Group entities, at least most of which have been doing business as Jerzee*s Bar & Grill ("Jerzees"), are located in Stark or Summit County, Ohio.

6. The Pub Group entities are "integrated employers" pursuant to 29 CFR § 825.104, as they have the same owner(s), common management, interrelated operations, centralized control of labor relations, and common financial control.

7. Maggiore, a resident of Stark County, Ohio, was one of Plaintiff's supervisors during her employment, and is and was, at all times relevant hereto, the owner of the Pub Group entities.

8. Defendants have, at all times relevant hereto, employed more than 50 employees within the 75-mile radius of where Plaintiff was employed with Defendants, and are "employers" within the meaning of the FMLA and Ohio R.C. § 4112.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C § 1331, as some of Plaintiff's claims arise under the laws of the United States (i.e., the FMLA).

10. This Court has supplemental jurisdiction over Plaintiff's claim arising under Ohio law pursuant to 28 U.S.C. § 1367.

11. Venue properly lies in this Court pursuant to 28 USC § 1391 because both Defendants reside in this judicial district, and the events giving rise to this action occurred in this judicial district.

**FACTUAL ALLEGATIONS**

12. Plaintiff, who was employed with the Defendants and/or their predecessors for approximately 28 years, most recently as an Assistant Manager of the Jerzees in Greene, Ohio, which location is registered as 619 Pub Group, Inc.

13. In approximately November 2017, Plaintiff was diagnosed with spinal stenosis and carpal tunnel syndrome in both hands, and her orthopedic surgeon scheduled her to undergo a series of two surgeries beginning in December 2017.

14. A few days after her diagnosis, Plaintiff met with Defendant Maggiore, informed him of her diagnosis, and told him that she needed to take some time off to undergo, and recover from her surgeries.

15. During that meeting, Plaintiff specifically asked Maggorie whether the company's insurance plan would cover her surgeries, and whether there was anything, such as FMLA leave, that she could use to take time off to undergo, and recover from, the surgeries.

16. In response, Maggorie told Plaintiff that he would not pay her for taking time off, and that she needed to talk to the Office Manager, Renee Bartolone ("Bartolone"), to see what the insurance covered.

17. Plaintiff subsequently met with Bartolone, and when she asked Bartolone for

3

information on FMLA leave and insurance coverage, Bartolone responded that she would have to get back to her.  Then, approximately 5 minutes later, Bartolone told Plaintiff something to the effect of: *we don't have anything like that, and your time off will not be covered by our insurance*.

18. As a result, Plaintiff rescheduled her first surgery for January 2018, so that she could use her paid time off, which renewed after the first of the year.

19. Several weeks before her first surgery, Plaintiff told Maggorie that her orthopedic surgeon estimated that she would need to take at least a month off work to undergo, and recover from, the two surgeries, and in response, Maggorie told Plaintiff that would not be a problem.

20. On January 23, 2018, Plaintiff underwent the first of the two scheduled orthopedic surgeries.

21. Two weeks later, on February 6, 2018, Plaintiff underwent the second orthopedic surgery.

22. A few days after the second surgery, Defendants' District Manager, Scott Paskoff, called Plaintiff and told her he wanted to scheduling a meeting with her at the Belden Village Jerzees (Dressler Pub Group, Inc.) within the next two days.

23. Plaintiff, who still had a brace on her neck and wrists, told Paskoff that she was not permitted to drive, but that she was having her braces removed on February 22, 2018, and could meet with him after her doctor's appointment.

24. During her appointment on February 22, 2018, Plaintiff's orthopedist told her that, due to minor compilations during the surgery on her neck, he was not going to release her

to return to work for another two weeks.[1]

25. After her appointment on February 22, 2018, Plaintiff went to the Belden Village Jerzees (Dressler Pub Group, Inc.) to meet with Paskoff, and when she arrived, Defendant Maggorie was also present.

26. During the meeting, Plaintiff stated that her orthopedist had yet to release her to return to work, and that she needed to take an additional two weeks off.

27. Immediately thereafter, Defendant Maggorie, who was on the phone during the first five minutes of the meeting, told Plaintiff that the company was letting her go.

28. Plaintiff, who had worked without incident for decades, could not understand why she was being terminated, and then, without any basis whatsoever, Defendant Maggorie falsely accused Plaintiff of being on drugs, and falsely represented that the staff at the Greene Jerzees (619 Pub Group, Inc.)—which Plaintiff had been managing without incident for the past several years—was performing better without her.

29. Upon information and belief, there were/are multiple male Managers and Assistant Managers, who are significantly younger than Plaintiff, who actually did use drugs and/or engaged in other egregious conduct, but were not terminated by Defendants.

30. Upon information and belief, Maggorie caught a male General Manager stealing and using drugs, and while Maggorie initially terminated him, he ultimately rehired him a year later.

31. Upon Information and believe, a male Assistant Manager who is significantly younger than Plaintiff, revealed a gun when a fight broke out at the Jerzees on Fulton Road in

---

[1] Plaintiff was ultimately released to return to work on March 5, 2018.

Canton, Ohio (Fulton Pub Group, Inc.). Nonetheless, that Assistant Manager is, upon information and belief, still employed with Defendant as an Assistant Manager.

32. Plaintiff, on the other hand—who had been a loyal and dedicated employee of Defendants for years—was terminated immediately after she informed Defendants that she needed to take additional time off because her doctor had yet to release her to return to work.

33. After her termination, Plaintiff learned that Defendants filled her Assistant Manager position with a male who, upon information and belief, is approximately 30 years younger than she.

## COUNT I
### (FMLA Interference - Violation of 29 U.S.C. § 2615(a)(1))

34. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

35. Plaintiff was an "eligible employee" as the term is defined under the FMLA, as she was employed with Defendants for more than 12 months at the time she requested leave, and worked in excess of 1,250 hours of service during the 12-month period preceding her request for leave.

36. Defendants, who employ more than 50 employees within a 75-mile radius, are employers under the FMLA.

37. Plaintiff was entitled to take a leave of absence under the FMLA, as she was suffering from a serious health condition for which she was required to undergo surgeries in order to perform the functions of her job.

38. Plaintiff gave Defendants reasonable notice of her intention to take leave to undergo, and recover from, her surgeries.

39. Defendants interfered with Plaintiff's rights to take FMLA leave, and otherwise deprived Plaintiff of her rights under the FMLA, including by: refusing to provide Plaintiff with FMLA paperwork; prohibiting Plaintiff from taking FMLA leave—which resulted in Plaintiff having to reschedule her surgeries and having to use her paid time off to undergo and recover from her surgeries; and failing to reinstate Plaintiff following her temporary (less than 2 month) leave of absence.

40. Defendants' actions and inactions violated Plaintiff's FMLA rights under 29 U.S.C. § 2601 *et seq.*, and violated 29 U.S.C. § 2615, including § 2615(a)(1), and thus, Plaintiff has remedies against Defendants under 29 U.S.C. § 2617, including but not limited to: lost wages, salary, benefits, and other compensation; interest on lost wages, salary, benefits, and other compensation at the prevailing rate; equitable relief; and reasonable attorneys' fee, reasonable expert witness fees, and other costs incurred in connection with this action.

41. Defendants' had no good faith basis for their acts and omissions described hereinabove, and had no reasonable grounds for believing that their acts and omissions were not a violation of 29 U.S.C. § 2615, and thus, Plaintiff is also entitled to liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii).

42. Defendants' conduct described hereinabove was engaged in willfully.

43. As a direct result of Defendants' unlawful employment practices described hereinabove, Plaintiff has suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

**COUNT II**
**(FMLA Retaliation/Discrimination - Violation of 29 U.S.C. § 2615(a)(2))**

44. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth

7

herein.

45.     Plaintiff was an eligible employee entitled to take a leave of absence under the FMLA to undergo, and recover from, her surgeries.

46.     Plaintiff engaged in the protected activity of requesting to take FMLA leave, and subsequently taking a temporary (less than 8 weeks) leave of absence to undergo, and recover from, her medical surgeries.

47.     Defendants knew that Plaintiff was exercising her rights under the FMLA.

48.     After and as a result of Plaintiff having engaged in the protected activity of requesting to take FMLA leave, and subsequently taking a temporary leave of absence to undergo, and recover from, her medical surgeries, Defendants retaliated and discriminated against Plaintiff by, *inter alia*:  terminating her employment, contesting her application for unemployment benefits, and, upon information and belief, submitting falsified documentation to the unemployment commission in response to Plaintiff's application for unemployment.

49.     A causal connection exists between Plaintiff's exercise of her protected FMLA rights and Defendants' adverse actions against her.

50.     Defendants' conduct violated Plaintiff's FMLA rights under 29 U.S.C. § 2601 *et seq.*, and violated 29 U.S.C. § 2615, including § 2615(a)(2), and thus, Plaintiff has remedies against Defendants under 29 U.S.C. § 2617, including but not limited to:  lost wages, salary, benefits, and other compensation; interest on lost wages, salary, benefits, and other compensation at the prevailing rate; equitable relief; and reasonable attorneys' fee, reasonable expert witness fees, and other costs incurred in connection with this action.

51.     Defendants had no good faith basis for their conduct described hereinabove, had

no reasonable grounds for believing that their conduct was not a violation of 29 U.S.C. § 2615, and thus, Plaintiff is also entitled to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

52. Defendants' conduct described hereinabove was engaged in willfully.

53. As a direct result of Defendants' unlawful employment practices described hereinabove, Plaintiff has suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT III
**(Disability/Perceived Disability Discrimination – Ohio R.C. § 4112)**

54. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

55. Plaintiff is a member of a protected class under Ohio R.C. § 4112.02, because at the time of her termination, Defendants regarded Plaintiff as having a disability.

56. Plaintiff is/was qualified for the Assistant Manager position she held during her employment with Defendants, and could safely and effectively perform the essential functions of said position.

57. Defendants discriminated against Plaintiff with respect to the terms and conditions of her employment based, at least in part, on her perceived disability.

58. Defendants took adverse and discriminatory employment actions against Plaintiff, including terminating Plaintiff's employment based on their perception of Plaintiff as disabled.

59. Defendants' discriminatory actions and inactions deprived Plaintiff of equal employment opportunities in violation of Ohio R.C. § 4112.

60. Defendants' discriminatory conduct reflects an outrageous and conscious

disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to suffer substantial damages, thereby rendering Defendants liable for punitive damages.

61.  As a direct result of Defendants' unlawful employment practices, Plaintiff suffered damages, including lost wages and mental anguish, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT IV
### (Age Discrimination – Ohio R.C. § 4112)

62.  Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

63.  Plaintiff is a member of a protected class under Ohio R.C. § 4112.14 based on her age (56).

64.  Plaintiff was, and is, equally and/or more qualified than her similarly situated significantly younger co-workers.

65.  Defendants took adverse employment actions against Plaintiff based on her age, including by, *inter alia*, terminating her employment.

66.  Defendants treated Plaintiff worse than her similarly situated significantly younger co-workers with respect to the terms and conditions of employment.

67.  Defendants replaced Plaintiff with a substantially younger employee.

68.  Defendant's age-based discriminatory actions violate R.C. § 4112.14, for which Plaintiff has remedies, including: lost wages, lost benefits, attorneys' fees, and costs associated with this action.

69.  As a direct result of Defendants age-based discriminatory employment practices, some of which are detailed above, Plaintiff suffered damages in an amount in excess of

Seventy-Five Thousand Dollars ($75,000.00).

## COUNT V
### (Gender Discrimination – Ohio R.C. § 4112)

70. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

71. Plaintiff is a member of a protected class under Ohio R.C. § 4112.02 based on her gender (female).

72. Plaintiff was, and is, equally and/or more qualified than her similarly situated male co-workers.

73. Defendants took adverse employment actions against Plaintiff based on her gender, including by, *inter alia*, terminating her employment.

74. Defendants treated Plaintiff worse than her similarly situated male co-workers with respect to the terms and conditions of employment.

75. Defendants replaced Plaintiff with a male employee.

76. Defendants' discriminatory actions and inactions deprived Plaintiff of equal employment opportunities because of her gender.

77. Defendants' discriminatory conduct was engaged in maliciously, reflects an outrageous and conscious disregard for Plaintiff's rights, which had a great probability of causing, and did cause, Plaintiff to suffer substantial damages, thereby rendering Defendants liable for punitive damages.

78. As a direct result of Defendants' gender-based discriminatory employment practices, some of which are detailed above, Plaintiff suffered damages, including lost wages and mental anguish, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

A. Order Defendants to make Plaintiff whole by providing compensation in the form of economic, emotional, and punitive damages, in an amount in excess of Seventy-Five Thousand Dollars ($75,000).

B. Award Plaintiff appropriate back pay, front pay, and reimbursement for lost wages, including salary, benefits, and bonuses, in an amount to be proven at trial;

C. Award Plaintiff liquidated damages for Defendants' FMLA violations;

D. Grant Plaintiff her attorneys' fees, costs, and disbursements;

E. Award Plaintiff pre- and post-judgement interest at the statutory rate; and

F. Grant such further and additional relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Matthew S. Grimsley*
Matthew S. Grimsley (0092942)
*mgrimsley@groedel-law.com*
Caryn M. Groedel (0060131)
*cgroedel@groedel-law.com*
Alanna Klein Fischer (0090986)
*afischer@groedel-law.com*
CARYN GROEDEL & ASSOCIATES CO., LPA
31340 Solon Road, Suite 27
Cleveland, OH 44139
Telephone: (440) 544-1122
Facsimile:   (440) 996-0064
Attorneys for Plaintiff

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Matthew S. Grimsley*
Matthew S. Grimsley (0092942)